## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| VICKI BECHARD, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-10-CV-285-XR |
| | § | |
| VIA METROPOLITAN TRANSIT, | § | |
| | § | |
| *Defendant*. | § | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

On this day the Court considered Defendant's Motion for Summary Judgment (Docket Entry No. 28) and Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence (Docket Entry No. 33).  Having considered the motions, responses and replies thereto, and the record in this case, the Court hereby DENIES Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence, and GRANTS Defendant's Motion for Summary Judgment.

### Background

Plaintiff Vicki Bechard has been continuously employed by VIA as a bus operator since about May 23, 2005.  During this time, she has been subject to several disciplinary actions, including two two-day suspensions, a one-day suspension, and a 12-month probation.

In November 2007, Bechard was issued two "reminders"[1] by her lead supervisor Eric

---

[1]VIA's Positive Discipline Policy includes 6 "Discipline Steps."  *See* Positive Discipline Policy (attached as Ex. F to Def's Mot.)  An "oral reminder" is the second step and a "written reminder" is the third step.  *Id.*  Reminders are somewhat akin to a reprimand.  Deposition of Michael Ledesma 23:12-24:4, Nov. 29, 2010 (attached as Ex. B to Def.'s Mot.).

Ponce[2] for two separate incidents involving bus patrons.[3]  The first incident involved a confrontation with a male passenger which resulted in Bechard insisting that he exit the bus through the rear door.[4]  The second incident arose when Bechard threatened to call Child Protective Services on a female passenger who was riding the bus with her daughter.[5]  Ponce met with Bechard to discuss these reminders, after which she filed an internal complaint with VIA's Equal Employment Opportunity ("EEO") Officer claiming that she was "disturbed" and "offended" by her conversation with Ponce.[6]  The EEO Officer investigated and found no evidence of discrimination,[7] and Bechard neither appealed the decision internally nor filed a timely external charge of discrimination with the EEOC.[8]

In April 2008, Supervisor Virginia Grijalba held a meeting with Bechard to discuss her high numbers of Customer Assistance Forms ("CAFs").[9]  Bechard recalls this meeting and its

_____

[2]The Manager of the Bus Services Transportation Department is Michael Ledesma. Ledesma Dep. 9:5-10:12.  Three lead supervisors report to Ledesma: Thomas Froates, Eric Ponce, and Henrietta Longoria. *Id.* at 24:5-13.  Each lead supervisor oversees 21 budgeted supervisors, who directly oversee the operators. *Id.* at 9:5-10:12.  An operator's shift and the sector in which he is driving determines which supervisor is responsible for supervision. *Id.* at 10:16-11:12.

[3]Written Reminders, Nov. 20, 2009 (attached as Exs. H and I to Def.'s Mot.).

[4]Deposition of Vicki Bechard 79:2-82:20, Oct. 13, 2010 (attached as Ex. A to Def.'s Mot.); Written Reminder, Nov. 20, 2009 (Ex. H).

[5]Bechard Dep. 82:21-83:21; Written Reminder, Nov. 20, 2009 (Ex. I).

[6]Bechard Dep. 85:9-86:18,

[7]Affidavit of Sylvia Enriquez, Dec. 13, 2010 (attached as Ex. P to Def.'s Mot.).

[8]Bechard Dep. 86:19-87:18.

[9]Bechard Dep. 103:3-22.

purpose, but denies being issued an oral reminder at that time.[10]

In July 2008, Bechard received an "at fault" CAF,[11] which she appealed to Ledesma, then to Vice President of Operations Keith Hom, and then to President/CEO John Milam.[12]  The CAF was issued for an incident in which Bechard refused to stop her bus in order to allow a boy, who ran alongside the bus, to board.[13]  She continued to refuse to allow him to board while the bus was stopped at a stop sign.[14]  Both Hom and Milam upheld the "at fault" determination.[15]  Bechard filed a second internal complaint of discrimination,[16] and VIA's EEO officer ultimately determined that she had not been discriminated or retaliated against.[17]

---

[10]*Id.*

[11]A CAF is a form that a customer may use to report a variety of positive or negative comments, concerns, or requests to VIA.  CAFs that are related to bus operator conduct are routed to Michael Ledesma's department.  Ledesma Dep. 38:18-39:4.  Supervisors investigate the CAFs and place them into three categories: "operator at fault", "operator not at fault", and "fault could not be determined."  *Id.* 40:21-41:8.  Ledesma then concurs or does not concur with the categorization.  *Id.* 41:17-18.  "Operator at fault" means that the operator is determined to have violated a company rule or policy, causing a disruption to the customer.  *Id.* 46:17-24.  An operator can be disciplined for receiving an "at fault" CAF.  *Id.*

[12]Bechard Dep. 113:11-16.  An appeal to Hom is the next step for an operator who disagrees with a disciplinary action taken by Ledesma.  Ledesma Dep. 52:21-53:4.  After Hom's decision, an operator may appeal to the President and CEO of VIA.  *Id.* 53:5-9.

[13]Bechard Dep. 104:16-108:24; Customer Assistance Form # 167715, Jul. 28, 2008 (attached as Ex. K to Def.'s Mot.); Exhibit L to Def.'s Mot. [video of incident].

[14]*Id.*

[15]Letter from Keith Hom to David Benavides, Aug. 26, 2008 and Letter from John Milam to David Benavides, Sep. 4, 2008 (attached as Ex. N to Def.'s Mot.).

[16]Bechard Dep. 132:8-134:10; Internal Discrimination Complaint Form, Aug. 28, 2008 (attached as Ex. O to Def.'s Mot.).

[17]Enriquez Aff.

On January 20, 2009, Ponce suspended Bechard for two days in response to an incident with an African-American passenger named Ms. King.[18]  Bechard refused to turn her head to look at Ms. King's bus pass, even when the bus was at a stop light, but instead continued to demand that Ms. King present the bus pass directly in front of her face.[19]  Bechard filed a grievance regarding her suspension with Ledesma, and then with Hom.[20]  Hom reduced the discipline to a written reprimand "with the proviso that any further incident of this kind is very likely to result in a suspension."[21]  Bechard then filed a third internal complaint of retaliation[22] and a charge of discrimination with the EEOC.[23]  VIA's EEO officer determined that Bechard had not been subjected to retaliation.[24]

In August 2009, Bechard was issued another "at fault" CAF after she ejected a passenger from her bus for allegedly "flicking" his lighter.[25]  She was given a one day suspension on August 24, 2009.[26]  She appealed the suspension to Hom, who upheld it,[27] and then filed a fourth internal

---

[18]Bechard Dep. 160:2-163:23; Ex. Q to Def.'s Mot. [video of incident].

[19]*Id.*

[20]Bechard Dep. 163:24-164:8.

[21]Letter from Keith Hom to David Benavides, Feb. 2, 2009 (attached as Ex. R to Def.'s Mot.).

[22]Bechard Dep. 175:18-20.

[23]Bechard Dep. 193:15-19.

[24]Enriquez Aff.

[25]Bechard Dep. 203:3-205:19; Ex. T to Def.'s Mot. [video of incident].

[26]Bechard Dep. 211:12-17.

[27]Bechard Dep. 211:212:16.

complaint of discrimination.[28]  The EEO officer again determined that no discrimination had occurred.[29]

On September 4, 2009, Bechard was suspended for two days and placed on a one year probation in response to an incident in which she refused to allow a male passenger to board.[30] The passenger was pushing a stroller and ran alongside the bus, but Bechard continued to refuse to board him.[31]  She appealed the decision to Hom, who again upheld it.[32]  She further appealed to then-president and CEO Keith Parker, who returned the grievance to Hom.[33]  Hom offered to reduce the probation to "time served" and provide her with two days worth of back pay.[34] Bechard declined the offer and appealed to Parker, who accepted Hom's proposed resolution.[35]

Bechard asserts claims under 42 U.S.C. § 2000 of retaliation and of discrimination based on race and sex.  She alleges that her January 20, 2009 suspension was retaliatory for filing internal complaints of discrimination; that her August 24, 2009 suspension was retaliatory for filing an external charge of discrimination with the EEOC in March 2009; and that her September 4, 2009 suspension and probation was retaliatory for filing internal complaints of discrimination

---

[28]Bechard Dep. 225:4-24.

[29]Enriquez Aff.

[30]Bechard Dep. 233:15-25, 238:1-25, 254:4-24; Ex. U to Def.'s Mot. [video of incident].

[31]Ex. U to Def.'s Mot.

[32]*Id.*; Letter from Keith Hom to David Benavides, Sep. 21, 2009 (attached as Ex. W to Def.'s Mot.).

[33]Affidavit of Keith Hom 2-3, Dec. 13, 2010 (attached as Ex. S to Def.'s Mot.).

[34]*Id.* at 3.

[35]*Id.*

in November 2007, August 2008, January 2009, and an external complaint of discrimination in

March 2009.  She alleges that each of the suspensions was also discriminatory because of her race

and sex.  She seeks an order of the Court rescinding, revoking, and expunging her suspensions

and probations from her employee file and record, restoration of all lost pay, compensatory

damages, and attorney fees.

### Legal Standard

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials

on file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56; *Anderson v. Liberty Lobby,

Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue is "genuine" if the

evidence is sufficient for a reasonable jury to return a verdict in favor of the nonmoving party.

*Anderson*, 477 U.S. at 248; *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

A fact is "material" if its resolution in favor of one party might affect the outcome of the case.

*Anderson*, 477 U.S. at 248; *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002).

The burden is on the moving party to show that "there is an absence of evidence to support

the nonmoving party's case." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th

Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986)).  Once the moving party meets its initial burden, the nonmoving party "must . . . set out

specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e); *Forsyth v. Barr*, 19 F.3d

1527, 1537 (5th Cir. 1994).  To avoid summary judgment, the nonmoving party must adduce

admissible evidence that creates a fact issue concerning the existence of every essential

component of that party's case and unsubstantiated assertions of actual dispute will not suffice.

6

*Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992). The opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991). The Court reviews all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009). A motion for summary judgment cannot be granted simply because there is no opposition. *Ford-Evans v. Smith*, 206 Fed. Appx. 332, 334 (5th Cir. 2006).

**Analysis**

**1. Motion to Strike Plaintiff's Summary Judgment Evidence**

Defendant moves to strike the portions of Michael Ledesma's deposition transcript that are not specifically cited to by either party, and the copy of VIA's Positive Discipline Policy that Plaintiff has attached as Exhibit 3 to the Ledesma deposition. VIA has provided a different copy of the Positive Discipline Policy, which is attached as Exhibit F to its motion for summary judgment.

Defendant provides no authority to support its motion that the Court should strike the portions of Ledesma's deposition that are not specifically cited to. The Court is under no obligation to sift through the un-cited portions of the transcript in order to independently uncover evidence that may create or defeat the finding that there is an issue of material fact. *Malacara v. Garber*, 353 F.3d 393 (5th Cir. 2003) (citing *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) and *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 (5th Cir. 1992), *cert. denied*, 506 U.S. 832 113 S.Ct. 98 (1992)). Neither is the Court prohibited from considering it, however, although the burden to establish an issue of material fact remains on the moving party. *See Skotak,* 953 F.2d at 915 n. 7 (noting that a district court was not prohibited from considering

evidence submitted but not specifically cited to in a summary judgment response, although such evidence was not part of the "competent summary judgment record" and thus would not be considered on appeal of the grant of summary judgment).  Accordingly, VIA's motion to strike this evidence is DENIED.

Defendant argues that the copy of the Positive Discipline Policy submitted by Bechard as evidence has not been properly authenticated as the pertinent policy at the time of the events in question, because Ledesma testified that it was a different format than any he had seen before. Ledesma testified that the policy correctly reflected the "Discipline Steps."[36]  The Court's comparison of the two copies of the Positive Discipline Policy reveals a difference between the "Level of First Offense" identified in relation to "Probation/suspension."  The issue of whether Bechard's suspensions and probation were in compliance with the policy is relevant to the summary judgment motion.  Because Ledesma testified that the "Discipline Steps" reflected on Bechard's copy were correct, and his actions in relation to the policy are at issue, the Court DENIES VIA's motion to strike this evidence.

**2.  Race- and Sex-Based Discrimination Claim**

Bechard claims that her suspensions and probation were discriminatory actions taken on the basis of her race, Anglo-American, and her sex, female.  Under the framework established by *McDonnell Douglas Corp. v. Green*, the initial burden to prove a prima facie case of discrimination falls upon the plaintiff.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  Bechard has presented no direct evidence of discriminatory

_____

[36]Deposition of Michael Ledesma 22:24-23:11, Nov. 29, 2010 (attached as Ex. A to Def.'s Mot. to Strike).

intent.  In general, where only circumstantial evidence of discrimination is offered, a plaintiff

must demonstrate the following: (1) she is a member of a protected class; (2) she possessed the

required qualifications for employment in the position; (3) despite her qualifications, she suffered

an adverse employment action; and (4) that a member of another class who was similarly situated

was treated more favorably.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct.

1817, 36 L.Ed.2d 668 (1973); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512

(5th Cir. 2001).  Once the Plaintiff establishes a prima facie case, the burden shifts to the

employer to articulate a "legitimate, nondiscriminatory reason" for the adverse action.  *Id*.  The

plaintiff then has the burden to show that the employer's stated reason was merely a pretext for

prohibited discrimination.  *McDonnell Douglas,* 411 U.S. at 804; *Okoye*, 245 F.3d at 512.

It is clear that Bechard is a member of the protected classes, and the parties do not dispute

that she is qualified for her position.  Assuming that she has suffered an adverse employment

action,[37] Bechard has still failed to present a prima facie case of discrimination.  She has presented

no evidence to satisfy the fourth prong of the prima facie discrimination case, that "similarly

situated" employees who were members of another class were treated any more favorably than

her.  A plaintiff must show that employees were treated differently in "nearly identical"

circumstances.  *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 353 (5th Cir. 2007) (citing

*Perez v. Texas Dep't of Criminal Justice*, 395 F.3d 206, 210 (5th Cir. 2004)).  The circumstances

of a plaintiff are not "nearly identical" to another employee's when the plaintiff's own conduct

---

[37]Bechard has only been subject to five days of suspension and one year of probation, and
VIA has now offered to downgrade or rescind three of the suspension days and the entire
probation term.  Nonetheless, VIA does not claim that Bechard has not suffered an "adverse
employment action."

9

accounts for the difference in treatment.  *Wallace v. Methodist Hosp. System*, 271 F.3d 212, 221 (5th Cir. 2001).

Bechard has failed to present any evidence that any of her colleagues were in "nearly identical" circumstances with regard to the discipline process.  VIA has provided evidence that Bechard was involved in a very high level of customer complaints and other negative incidents. Bechard received over 100 customer complaints and filed over 200 incident reports between the time she was hired in May 2005 and the appeal of her last one-day suspension and 12-month probation in September 2009.[38]  She received 43 complaints between November 18, 2007 and November 18, 2008, making her the third highest recipient of complaints overall.[39]  Ledesma testified that the average bus operator receives only six to ten complaints each year, and a number of twenty or more in a given year is considered problematic.[40]  Bechard was even called in to a meeting with supervisor Grijalba specifically to discuss her high number of CAFs.[41]

Bechard has provided no evidence of how any other operators with such high numbers of complaints were treated.  Rather, her response identifies only one other alleged comparator, a Hispanic man named Alfred Gomez, and argues that he was "given the benefit of the VIA progressive discipline policy although he had several At Fault CAFs and two accidents in a few

---

[38]Employee History for Vicki Bechard, May 23, 2005-Sep. 25, 2009 (attached as Ex. X to Def.'s Mot.); Letter from Keith Hom to Edward Reid, Sep. 21, 2009 (attached as Ex. W to Def.'s Mot.).

[39]Employee Feedback List, Nov. 18, 2008 (attached as Ex. Z to Def.'s Mot.).

[40]Ledesma Dep. 101:1-5.

[41]Bechard Dep. 103-104 and Exhibit J.

months period."[42]  Bechard has failed to present any evidence, however, to suggest that Gomez

was in "nearly identical" circumstances with regard to the number of CAFs and other complaints

received.  In fact, the record suggests that Bechard had nearly twice the 22 complaints received by

Alfred Gomez during the same time frame.[43]

Furthermore, Bechard fails to even establish that she was treated differently than Gomez.

She claims that she was "assessed disciplinary actions without the benefit of the CAF system, or

the benefit of the progressive disciplinary policy," but provides no evidence to support this

assertion.[44]  VIA has provided evidence that it followed the disciplinary policy in response to the

incidents that led to Bechard's suspensions and probation.[45]  Bechard argues that Ledesma did not

follow the CAF process before suspending her on January 20, 2009,[46] but provides no evidence

that any such process is required.  In contrast, the Positive Discipline Policy states that the

"discipline may start at any step."[47]  Furthermore, despite Bechard's arguments on the issue, there

is no evidence of any requirement that an employee receive three at fault CAF determinations in a

---

[42]Pl.'s Resp. to Def.'s Mot. for Summ. J. 14, Jan. 4, 2011 (Docket Entry No. 30).

[43]Employee Feedback List, Nov. 18, 2008 (attached as Ex. Z to Def.'s Mot.).

[44]Pl.'s Resp. at 15.

[45]Probation and Suspension are identified in the Positive Discipline Policy as steps that may be taken in response to Offense Levels II and III.  Positive Discipline Policy (attached as Ex. F. to Def.'s Mot. and as Ex. 2 to Pl.'s Resp. to Def.'s Mot.).

[46]Pl.'s Resp. at 7-8.

[47]Positive Discipline Policy (attached as Ex. F. to Def.'s Mot. and as Ex. 2 to Pl.'s Resp. to Def.'s Mot.).

one-year period before being subject to suspension.[48]  Furthermore, Bechard was aware of where she stood with regard to the disciplinary policy, as Hom warned Bechard in January 2009 that any similar future incident was "very likely to result in a suspension."[49]

        In conclusion, Bechard has not provided evidence that she was not disciplined in accordance with the Policy, or otherwise disciplined any differently than any other employee, especially one with such a high number of complaints and incidents.  Thus, there is no issue of material fact suggesting that Bechard was treated differently than other employees in "nearly identical" circumstances, and Bechard has failed to establish a prima facie case of discrimination.[50]  Summary judgment is therefore GRANTED to VIA on Bechard's discrimination claim.

**3.  Retaliation Claim**

        Bechard argues that her January 2009 suspension was retaliatory, and that such motive can be inferred because it was not imposed in accordance with the disciplinary policy.  She claims that her August and September suspensions were imposed in retaliation for her EEOC complaint, and that her September suspension and probation were in retaliation for filing an internal complaint regarding her August suspension.  If a plaintiff fails to make a prima facie showing of retaliation,

_____

        [48]*See* Pl.'s Resp. at 11-12.  Bechard noted that Ledesma testified that three at fault CAF determinations may subject an employee to higher scrutiny, but the deposition testimony does not support any conclusion that this was a requirement of the Disciplinary Policy.  Ledesma Dep. 48:14-49:4.

        [49]Letter from Keith Hom to David Benavides, Feb. 2, 2009 (attached as Ex. R to Def.'s Mot.).

        [50]Even if Bechard were able to satisfy the requirements of a prima facie case, any pretext argument that Bechard may raise is defeated by the lack of any material fact suggesting that she was treated differently from similarly situated comparators.

then summary judgment for the defendant is warranted. *Dallas v. Dallas Area Rapid Transit,* 383 F.3d 309, 319 (5th Cir. 2004); *Ackel v. National Communications, Inc.,* 339 F.3d 376, 385 (5th Cir. 2003) (citing *Banks v. East Baton Rouge Parish School Board,* 320 F.3d 570. 575 (5th Cir. 2003)). A prima facie case of retaliation requires evidence that (1) the Plaintiff engaged in protected conduct, (2) the Plaintiff was thereafter subjected to an adverse employment action, and (3) the adverse employment action was made in response to the protected conduct. *Hockman v. Westward Communications,* 407 F.3d 317, 330 (5th Cir. 2004) (citing *Chaney v. New Orleans Public Facility Management,* 179 F.3d 164, 167 (5th Cir. 1999)).

A "materially adverse" action in the retaliation context is one that would "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Railway. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations omitted). The purpose of the anti-retaliation provision is to "prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms." *Id.* (citing *Robinson v. Shell Oil Co.,* 519 U.S. 337, 346 (1997)).

Bechard engaged in protected conduct by filing internal complaints and external charges of discrimination with the EEOC. VIA does not dispute that fact, nor does VIA seem to dispute that a one-day or two-day suspension or probation constitutes a materially adverse action. VIA argues, however, that Bechard's retaliation case fails because there is no evidence of any causal link between her protected conduct and the disciplinary actions, other than her own subjective belief.[51] Bechard argues that the retaliation claim should survive summary judgment based on the close timing between her filing internal and external discrimination complaints and Ledesma's alleged

---

[51]Def.'s Mot. at 22.

failure to follow the disciplinary policy.

In order to establish that the employee's protected conduct resulted in the alleged retaliation, the employee must establish that the employer knew of the employee's protected activity. *Manning v. Chevron Chemical Co.,* 332 F.3d 874, 883 (5th Cir. 2003)*; Watts v. Kroger Co.,* 170 F.3d 505, 512 (5th Cir. 1999). Ledesma admitted he was aware that Bechard had filed an external EEOC charge after her January 2009 suspension, although he was not aware of any details.[52] He also testified that he would not necessarily have knowledge of the internal discrimination complaints that she had filed.[53] Bechard presented no evidence that Ledesma had any actual knowledge of her protected conduct, but argues that the retaliatory motive can be inferred by the timing of Ledesma's disciplinary decisions.

Close timing between the employee's protected activity and the alleged retaliatory action may also be sufficient to provide the causal connection required in a prima facie retaliation case. *Swanson v. General Services Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (citing *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993)). Once the employer offers a legitimate, non-discriminatory reason for the timing, however, the plaintiff must offer evidence to suggest that retaliation was the true motive. *Swanson,* 110 F.3d at 1188.

Here, the timing between Bechard's discrimination complaints and her suspensions and probation are not sufficient to provide the causal connection. VIA has offered significant evidence to support that each of the disciplinary actions was taken in response to a specific

---

[52]Ledesma Dep. 81:1-82:24.

[53]*Id.* 54:10-55:11.

14

customer incident.[54]  The disciplinary records clearly reflect that the January 2009 suspension was imposed in response to the Ms. King incident, and the August and September 2009 suspensions were imposed in response to the lighter and the stroller incidents.  These actions were taken quickly after each incident occurred.  Bechard's own deposition testimony, as well as the Incident Reports and at-fault CAFs issued in relation to each incident, detail the altercations that ultimately led to her three suspensions and probation.[55]

Furthermore, as noted above, Bechard's arguments that Ledesma failed to follow the appropriate disciplinary procedures are misguided.  Despite Bechard's prolonged arguments, there is no evidence before the Court to suggest that an operator can only be disciplined after receiving a CAF.  Furthermore, VIA provides detailed evidence of its adherence to the terms of the Progressive Discipline Policy in the form of incident reports, CAFs, and appeal decisions.[56]

In conclusion, there is nothing beyond Bechard's conclusory allegations to suggest that her suspensions and probation were due to a retaliatory motive, or that they were in any way related to her filing internal and external complaints of discrimination.  Accordingly, summary judgment is GRANTED to VIA on this claim.

## Conclusion

Defendant's Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence (Docket Entry No. 33) is DENIED.  Defendant's Motion for Summary Judgment (Docket Entry

---

[54]*See* Exs. Q, R, T, U, W.

[55]*See* Bechard Dep. 76-83, 104-108, 160-162, 205-206, 233, 238; *see also* Exs. G, H, I, K, L, Q, T, U.

[56]*See id.*

No. 28) is GRANTED.  No claims remain pending in this case.  The Clerk is directed to enter a judgment that the plaintiff recover nothing, the action be dismissed on the merits, and the defendant VIA Metropolitan Transit recover costs from the plaintiff Vicki Bechard.

It is so ORDERED.

SIGNED this 9th day of February, 2011.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE